TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiff, proposed FLSA Collective and potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT COURT OF NEW YORK**
---------------------------------------------------------------x

QIANG WENG~~, and~~
~~on his own behalf and~~ HUI PING YAN,
*on behalf of* themselves and *others similarly situated,*

~~Plaintiff,~~

Plaintiffs,

v.

HUNGRYPANDA US INC
    d/b/a HungryPanda~~,~~:
JIAWEI SUN, ~~and~~
KELU LIU, and
MOLLY TANG,

Defendants.

---------------------------------------------------------------x

Case No. 19-cv-11882 (KPF)

29 U.S.C. § 216(b)
COLLECTIVE ACTION & FED.
R. CIV. P. 23 CLASS ACTION

**AMENDED COMPLAINT**

~~Plaintiff~~Plaintiffs QIANG WENG (hereinafter ~~referred to as Plaintiff),~~ "Weng") and HUI PING YAN (hereinafter "Yan") (hereinafter collectively "Plaintiffs"), on behalf of ~~himself~~themselves and others similarly situated, by and through ~~his attorney~~their attorneys, Troy Law, PLLC, hereby ~~brings~~bring this complaint against Defendants HUNGRYPANDA US INC d/b/a HungryPanda~~,~~: (hereinafter the "Corporate Defendant"), JIAWEI SUN~~, and~~ (hereinafter "Sun"), KELU LIU (hereinafter "Liu"), and ~~alleges~~MOLLY TANG (hereinafter "Tang") (hereinafter collectively with Sun and Liu, the "Individual Defendants," hereinafter collectively with the Corporate Defendant, Sun, and Liu, the "Defendants"), and allege as follows:

## INTRODUCTION

~~TTroy~~——————————————ASb
Amended Complaint

1 of 33

1.  This action is brought by the ~~Plaintiff QIANG WENG~~Plaintiffs, on behalf of ~~himself~~themselves as well as other employees similarly situated, against the Defendants for alleged violations of the Fair Labor Standards Act~~,~~ ( ("FLSA~~)~~"), 29 U.S.C. § 201 *et seq.* and New York Labor Law ~~(~~("NYLL~~),~~"), N.Y. Lab. L., arising from Defendants' various ~~willfully~~willful and unlawful employment policies, patterns and practices.

2.  Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay ~~its~~their employees, including ~~Plaintiff~~Plaintiffs, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.  ~~Plaintiff alleges~~Plaintiffs allege pursuant to the FLSA, that ~~he is~~they are entitled to recover from the Defendants: (1) unpaid minimum ~~wage and~~wages, (2) unpaid overtime wages, ~~(2)~~ 3) retained tips, (4) liquidated damages, (~~3~~5) prejudgment and post-judgement interest; and or (~~4~~6) attorney's fees and cost

4.  Plaintiff further alleges pursuant to the NYLL ~~§ 650 et seq. and~~Title 12~~,~~ Section 146 of the New York Codes, Rules and Regulations ~~§ 146 (NYCRR)~~(the "Wage Order") that ~~he is~~they are entitled to recover from the Defendants: (1) unpaid minimum ~~wage compensation and unpaid overtime compensation~~wages, (2) unpaid overtime wages, (3) retained tips, (4) unpaid spread-of-~~hours premium, (3)~~time wages, (5) liquidated damages, (6) up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide wage notices compliant with Section 195.1 of the NYLL at time of hire, (7) up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide ~~a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours~~

along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part paystubs compliant with Section 195.3 of the minimum wage, and the employee's gross and net wages for NYLL with each pay day, (5) liquidated damages equal to the sum payment of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) wages, (8) 9% simple prejudgment interest provided by NYLL, (7) , (9) post-judgment interest, and (8) attorney's fees and costs

5.   Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the Defendants: (1) unpaid minimum wage and unpaid overtime wages, (2) out of pocket expenses to delivery experts on the road, (3) liquidated damages, (4) prejudgment and post-judgement interest; and or (5) attorney's fees and cost.

6. 4.   Plaintiff further alleges pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that he is entitled to recover from the Defendants: (1) unpaid minimum wage compensation and unpaid overtime compensation, (2) unpaid spread-of-hours premium, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) out of pocket expenses to delivery experts on the road, (6) liquidated damages

TTroy                              ASb
Amended Complaint

~~equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (7) 9% simple prejudgment interest provided by NYLL, (8) post judgment interest, and (9~~10) attorney's fees and costs.

### JURISDICTION AND VENUE

5. This Court has ~~original federal question~~subject-matter jurisdiction over this controversy under ~~29 U.S.C. §~~Section 216(b) of the FLSA and ~~28 U.S.C. §~~Section 1331~~, and~~ of Title 28 of the United States Code.

~~7.~~6. This Court has supplemental jurisdiction over ~~the NYLL~~Plaintiffs' state-law claims ~~pursuant to 28 U.S.C. §~~under Section 1367~~(a).~~, Subsection (a) of Title 28 of the United States Code.

7. Venue is proper in the United States District Court for the Southern District ~~Court~~ of New York pursuant to ~~28 U.S.C. §§~~Section 1391, Subsections (b) and (c~~.~~) of Title 28 of the United States Code, because ~~all~~ Defendants ~~are residents of the State~~conduct business in ~~which the district is located.~~the Southern District of New York, and because the acts and ~~HUNGRYPANDA US INC. d/b/a~~omissions giving rise to the claims alleged herein took place within the Southern District of New York.

### PLAINTIFFS

8. Weng worked for Defendants as a regular deliveryman for HungryPanda ~~where the district is located.~~, the food delivery service that Defendants operated, from on or about May 9, 2019 through on or about September 23, 2019.

### ~~PLAINTIFF~~

9.      From May 9, 2019 to the present day, Plaintiff QIANG WENG is employed by Defendants at to work as a Deliveryman at HungryPanda located at 130 W 42nd Street, Suite 205 New York, NY 10036.

9.      Yan worked for Defendants as a regular deliveryman and special deliveryman for Hungry Panda from on or about June 1, 2019 through on or about July 31, 2019, and from on or about August 9, 2019 through on or about March 18, 2020.

**<u>DEFENDANTS</u>**

*Corporate Defendant*

10.      Corporate Defendant HUNGRYPANDA US INC d/b/a HungryPanda is a foreign business corporation organized under the laws of the State of Delaware with a principal addresswhich maintains an office and place of business at 130 W 42nd Street, Suite 205405, New York, NY 10036. (the "Manhattan Office").

11.      HUNGRYPANDA US INC d/b/a HungryPandaCorporate Defendant is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

12.      HUNGRYPANDA US INC d/b/a HungryPandaCorporate Defendant purchased and handled goods moved in interstate commerce.

*Owner/OperatorIndividual Defendants*

13.      JIAWEI SUN is the Manager of HUNGRYPANDA US INC d/b/a HungryPandaSun is the manager of Corporate Defendant (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at Corporate Defendant, and delegated these powers to subordinates within Corporate Defendant, including the managers "Fatty," "Ethan," and "Aaron" with whom the Plaintiffs are familiar.

14.    Sun acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Corporate Defendant.

15.    Liu, the President of Corporate Defendant, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at Corporate Defendant, and delegated these powers to subordinates within Corporate Defendant, including the managers "Fatty," "Ethan," and "Aaron" with whom the Plaintiffs are familiar.

16.    Liu acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Corporate Defendant.

13. 17.  Tang has the authority to represent and bind Corporate Defendant as shown by, for instance, her signature on behalf of the Corporate Defendant on the stipulation for substitution in this matter, and . (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at HUNGRYPANDA US INC d/b/a HungryPandaCorporate Defendant, and delegated these powers to subordinates within Corporate Defendant, including the managers "Fatty," "Ethan," and "Aaron" with whom the Plaintiffs are familiar.

14. 18.  JIAWEI SUNTang acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with HUNGRYPANDA US INC d/b/a HungryPandaCorporate Defendant.

> Formatted: Justified, Right:  0"

> Formatted: All caps

> Formatted: Tab stops: Not at  3" + 6"

~~15.     KELU LIU, the President of HUNGRYPANDA US INC d/b/a HungryPanda (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at HUNGRYPANDA US INC d/b/a HungryPanda.~~

~~16.     KELU LIU, acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with HUNGRYPANDA US INC d/b/a HungryPanda.~~

## STATEMENT OF FACTS

### ~~Wage and Hour Claims~~

~~17.~~19.  Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiff, the ~~FLSA~~ Collective ~~Plaintiffs~~, and the Class.

~~18.~~20.  Pursuant to NYCRR Part 146-2.2 and 29 USC § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

~~19.~~21.  At all relevant times, Defendants knowingly and willfully failed to pay ~~Plaintiff~~Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

~~20.~~22.  At all relevant times, Defendants knowingly and willfully failed to pay ~~Plaintiff his~~Plaintiffs their lawful overtime compensation of one and one-half times (1.5x) their regular ~~rate~~rates of pay for all hours worked over forty (40) in a given workweek.

~~21.~~23.  While employed by Defendants, ~~Plaintiff was~~Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

~~22.~~24.  Defendants failed to keep full and accurate records of ~~Plaintiff's~~Plaintiffs' hours

~~TTroy~~ASb

Amended Complaint

and wages.

23.25.  Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

24.26. At all relevant times, Defendants knowingly and willfully failed to provide PlaintiffPlaintiffs and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

25.27.  Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiff worked over ten (10) hours would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

26.28.  Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

*Plaintiff WENG QIANG*

From*Weng*

27.29.  Weng was hired on about May 9, 2019 to the present day, Plaintiff WENG QIANG is employed by Defendants to work as a deliveryman., following an interview at HungryPanda's Manhattan office.

28.   Plaintiff was dispatched by Hungry Panda to cover the deliveries made in Long Island City, though he covers Elmhurst as well.

29.   From on or about May 9, 2019 to the present day, Plaintiff WENG QIANG's regular work schedule ran from 11:00 to 22:00 for eleven (11) hours, with two (2) days off for TRoy                                              ASb

Amended Complaint

**Formatted:** Indent: Left:  0", Right:  0"

**Formatted:** Tab stops: Not at  3" + 6"

a total of fifty-five (55) hours each week.

30. During this time, Plaintiff would be able to eat for the full thirty minutes during the lunch break for three-fifth (3/5) of the time, while for the other two-fifth (2/5) of the time, Plaintiff would take only ten (10) minutes to eat the meal.

31. Furthermore, for half of the time, Plaintiff would only eat one (1) meal per day, as opposed to two (2) meals per day.

32. Plaintiff was not paid at least the minimum wage for all hours worked.

33. Plaintiff was not paid overtime for all hours worked.

34. Instead, at all relevant times, Plaintiff WENG QIANG was paid a flat rate of Six Hundred Dollars ($600) per week and Three Dollars ($3) for each delivery.

35. On average, Plaintiff WENG QIANG would receive a total of Eight Hundred Dollars ($800) per week.

36. Instead, Plaintiff was paid for only fifty (50) hours a week, at a straight rate of twelve (12) dollars an hour.

37. The wage is directly deposited to Plaintiff WENG QIANG's account.

38. At all relevant times, Plaintiff WENG QIANG was not paid overtime pay for overtime work.

39. At all relevant times, Plaintiff WENG QIANG was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

40. Further, at all relevant times, Plaintiff WENG QIANG had his tips misappropriated.

41. Specifically, Plaintiff WENG QIANG never received any of the tips that the customers left on top of the three dollar delivery charge per case even though the customers

Formatted: Tab stops: Not at  3" + 6"

believed that the tips was intended for them.

42.     Throughout his employment, Plaintiff WENG QIANG was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

30.     After his interview, an individual named Huo Shao Tou Ren helped Weng install the HungryPanda app and register a HungryPanda delivery account, and ordered him to report to the HungryPanda office at Yeeho Business Center at 135-27 38th Avenue, Flushing, NY 11354 (the "Flushing Office").

31.     At the Flushing Office, Weng was introduced to his supervisor, "Ethan," who had him sign several documents.

32.     However, at neither the Manhattan Office nor at the Flushing Office was Weng furnished with a written wage notice in both English and Chinese, his primary language, containing: his rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer;  the name of the employer;  any "doing business as" names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  and the telephone number of the employer.

33.     Weng did not see any posters regarding the minimum wage, overtime, or other employee rights at the Flushing Office.

34.     Throughout his employment, Plaintiff WENG QIANG was not compensated at

**Formatted:** Pattern: Clear (White)

**Formatted:** Tab stops: Not at  3" + 6"

least at one and one half Weng worked as a regular deliveryman, meaning his promised hourly wage for all hours worked above forty (40) in each workweekjob was to pick up food orders from one of several depots operated by HungryPanda, and deliver them to customers within that depot's service area.

Formatted: Pattern: Clear (White)

43.35.  The food was brought from restaurants to the depots by so-called special deliverymen.

Formatted: Indent: Left:  0", Right:  0"
Formatted: Pattern: Clear (White)

44.36.  Throughout his employment, Plaintiff WENG QIANG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at Weng was not free to work whenever he wanted. Rather, his promised rateschedule was determined by "Ethan." Weng could not work without "Ethan's" permission.

Formatted: Pattern: Clear (White)
Formatted: Pattern: Clear (White)
Formatted: Pattern: Clear (White)

45.    In delivering food to Defendants' customers, Plaintiff WENG QIANG drives between 50 miles per day, with an average of 250 miles per week.

46.    June and July are not very busy months and Plaintiff WENG QIANG drives between 10 miles per day, with an average of 50 miles per week.

37.    Plaintiff WENG QIANG"Ethan" would send the deliverymen under him, including Weng, a weekly work schedule each Friday via WeChat.

38.    Throughout his employment, "Ethan" scheduled Weng to work from 11:00 hours through 22:00 hours each work day, so each work day was 11 hours long. Typically, Weng had to work five days in a week, and had Wednesdays and Thursdays off, but would sometimes have to work six days in a week rather than five.

39.    Weng has in his possession a copy of the work schedule for September 16 through September 22, 2019. This work schedule identifies 32 full-time employees who were scheduled to work specific days and times during that week, one full-time employee who was not scheduled to

Formatted: Pattern: Clear (White)

Formatted: Tab stops: Not at  3" + 6"

work during that week, two part-time employees who were scheduled to be on call on specific days during that week, and one part-time employee who was not schedule to be on call during that week.

40.     Weng did not have scheduled meal breaks, but ate when he could during the day and was on call to make deliveries if they came up on the HungryPanda app before he finished eating. About fifty percent of the time, he was able to eat two meals, but about fifty percent of the time, he was only able to eat one. About sixty percent of the time, he was able to take about 30 minutes to eat his meal, while the remaining forty percent of the time he was only able to take about 10 minutes.

41.     Weng was not free to take delivery orders to customers anywhere he wanted within HungryPanda's whole service area, but was assigned a specific depot and turf in Long Island City. On the schedule, several other employees' specific turfs are called out: Zhi Ping Zhang and Zi Lin Wang were assigned turfs in Elmhurst and Long Island City; Hui Lin and Qi Sun were assigned turfs in Manhattan; and Lin Jie Lu and Ri Xin Jiang were assigned turfs in Flushing.

42.     Weng could only deliver outside his turf with specific permission from "Ethan," who from time to time would give Weng assignments in Elmhurst, outside his turf.

43.     Weng was not ~~reimbursed by Defendants for the cost of the gasoline or the cost of maintaining the~~free to ignore or decline to deliver orders that were assigned to him.

44.     Weng was not free to take a day off whenever he wanted, but had to ask "Ethan" for permission in advance. Weng is in possession of several WeChat conversations between himself and Ethan," where he asks for days off and "Ethan" either grants him or denies him the privilege of a day off, depending on the company's need.

45.     Weng was instructed verbally not to work for companies other than HungryPanda.

**Formatted:** Tab stops: Not at  3" +  6"

46.     Weng did not work for any other employer during his employment with HungryPanda.

47.     Weng was paid a flat $600.00 per week for his base salary, plus a piece rate of $3.00 for every delivery vehicle for. Weng's flat $600.00 per week base salary was intended to compensate him at a rate of $12.00 per hour for 50 hours of work, even though "Ethan" typically scheduled him to work 55 hours per week and sometimes scheduled him to work 66 hours per week.

48.     In this way, Weng was denied the minimum wage for hours worked in excess of 50 each week, and overtime for all hours worked in excess of 40 each week.

49.     Nor was Weng paid an extra hour's pay at the New York minimum wage for each day he worked a spread of time longer than 10 hours.

50.     On average, Weng's take-home pay each week added up to about $800.00.

51.     Weng was not provided either verbal or written notice that HungryPanda would take a tip credit against the minimum wage.

52.     The HungryPanda app permits customers to leave a 15%, 18%, or 20% tip, or to choose their own percentage. The app calls these amounts tips. However, Weng never received any of the tips that were left for him; instead, all tips were retained by HungryPanda.

53.     Weng was required to wear a HungryPanda uniform. "Ethan" provided him with a summer and a winter uniform, along with a raincoat. Weng was required to return his uniforms to the Flushing Office after his employment ended.

54.     Throughout his employment, Weng was not furnished a wage statement with each payment of wages listing:  the dates of work covered by that payment of wages;  name of employee;  name of employer;  address and phone number of employer;  rate or rates of pay and basis thereof,

Formatted: Tab stops: Not at  3" +  6"

whether paid by the hour, shift, day, week, salary, piece, commission, or other;  gross wages;  deductions;  allowances, if any, claimed as part of the minimum wage;  and net wages.

55.    Weng made his deliveries using a motorcycle. He drove about 50 miles per day (about 250 miles per 5-day week, about 300 miles per 6-day week), except in June and July when he drove about 10 miles per day (about 50 miles per 5-day week, about 60 miles per 6-day week), all for Defendants' benefit.

56.    Weng was required to bear his own gasoline costs.

***Yan***

***June 1, 2019 through July 31, 2019***

57.    Yan was hired on or about June 1, 2019, following an interview at HungryPanda's Manhattan office.

58.    During the interview, he was told he would be paid $130.00 per day.

59.    After his interview, a young man with about 20 years, about 177 cm tall, and weighing about 64 kg helped Yan install the HungryPanda app and register a HungryPanda delivery account, and instructed him to report to 39th Street in Manhattan.

60.    Yan was not furnished with a written wage notice in both English and Chinese, his primary language, containing: his rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer;  the name of the employer;  any "doing business as" names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  and the telephone number of the employer.

61.    Yan did not see any posters regarding the minimum wage, overtime, or other employee rights at the Flushing Office.

62.     From on or about June 1, 2019 through on or about July 31, 2019, Yan worked as a regular deliveryman with a depot and turf in Manhattan.

63.     During his period, Yan was regularly scheduled to work from 11:00 hours through 22:00 hours, without any break, six days per week, or in other words 66 hours per week.[1]

64.     During this period, Yan was not free to work whenever he wanted. Rather, his schedule was determined by his manager, whom he knew as "Fatty," and Yan could not work without his manager's permission.

65.     Yan was not free to ignore or decline to deliver orders that were assigned to him.

66.     During this period, Yan was paid a flat daily rate of $130.00.

67.     Yan was not provided either verbal or written notice that HungryPanda would take a tip credit against the minimum wage.

68.     The HungryPanda app permits customers to leave a 15%, 18%, or 20% tip, or to choose their own percentage. The app calls these amounts tips. However, Yan never received any of the tips that were left for him; instead, all tips were retained by HungryPanda.

69.     Around the end of July, 2019, Yan grew tired of the long hours and he quit on or about July 31, 2019.

### *August 9, 2019 through March 18, 2020*

70.     As part of his job search after quitting his job at HungryPanda, a friend gave Yan "Ethan's" number. Only after calling it did Yan learn that "Ethan" was the supervisor at HungryPanda Flushing.

71.     Yan met with "Ethan" at HungryPanda's Flushing office on or about August 9, 2019.

---

[1] Yan has stated prior that he was scheduled to work from 11:00 hours through 20:00 hours each day, six days per week, and 54 hours per week during this period. That was incorrect.

Formatted: Tab stops: Not at  3" +  6"

72.     "Ethan" had Yan sign documents he did not understand, because they were in English and he did not read English.

73.     "Ethan" told Yan that he would be paid $130.00 per day.

74.     Yan did not see any posters regarding the minimum wage, overtime, or other employee rights at the Flushing Office.

75.     Yan was not furnished with a written wage notice in both English and Chinese, his primary language, containing: his rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer;  the name of the employer;  any "doing business as" names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  and the telephone number of the employer.

76.     Throughout this period, Yan worked as a so-called special deliveryman. That meant that his job was to collect food from restaurants for the Flushing depot used by regular deliverymen to cover the Flushing turf, the "New York Food Court" located at 133-35 Roosevelt Avenue, Flushing, NY 11354.

77.     This was not a customer-facing, and thus not a tipped, position.

78.     Throughout this period, Yan was not free to work whenever he wanted. Rather, his schedule was determined by his manager, first by "Ethan," and then later "Ethan" was replaced by "Aaron." Yan could not work without their permission.

79.     "Ethan" and "Aaron" would send the deliverymen under them, including Yan, a weekly work schedule each Friday via WeChat.

80.     Yan is in possession of two such weekly work schedules: one for the week of

**Formatted:** Tab stops: Not at  3" +  6"

December 16, 2019 scheduling him to work from 11:00 hours through 22:00 hours December 17, 18, 19, 20, 21, and 22; and one from the week of March 2, 2020 scheduling him to work from 11:00 hours through 22:00 hours on March 3, 4, 6, 7, and 8.

81.     From on or about August 9, 2019 through on or about September 20, 2019, Yan was scheduled to work, and worked, from 11:00 hours through 20:30 hours without a break, five days per week, amounting to 47.5 hours each week.

82.     From on or about September 21, 2019 through on or about November 22, 2019, Yan was scheduled to work, and worked, from 11:00 hours through 22:00 hours without a break, five days per week, amounting to 55 hours each week.

83.     From on or about November 23, 2019 through on or about February 16, 2020, Yan was scheduled to work, and worked, 11:00 hours through 22:00 hours without a break, six days per week, amounting to 66 hours each week. By this point, Yan had been returned to the grueling schedule that had caused him to quit in the first place.

84.     From on or about February 17, 2020 through on or about March 18, 2020, Yan was scheduled to work, and worked, 11:00 hours through 22:00 hours without a break, five days per week, amounting to 55 hours per week.

85.     Yan was not free to take a day off whenever he wanted, but had to ask "Ethan" or "Aaron" for permission in advance.

86.     Throughout his employment, Yan was not permitted to work for anyone other than HungryPanda. "Ethan" told Yan explicitly, when was rehired on or about August 8, 2019, that if he worked for any other delivery companies, he would be fired.

87.     Yan did not work for any other employer during his employment with HungryPanda.

**Formatted:** Tab stops: Not at  3" +  6"

88.    Throughout this period, Yan was paid a flat daily rate of $130.00. This daily rate did not include pay for overtime or spread-of-time.

89.    Throughout this period, Yan was required to wear a HungryPanda uniform. "Ethan" provided him with a summer and a winter uniform, along with a raincoat. Yan was required to return his uniforms to the Flushing Office after his employment ended.

90.    Throughout his employment, Yan was not furnished a wage statement with each payment of wages listing:  the dates of work covered by that payment of wages;  name of employee;  name of employer;  address and phone number of employer;  rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  gross wages;  deductions;  allowances, if any, claimed as part of the minimum wage;  and net wages.

~~47.~~91.  Yan made his deliveries using an electric bicycle.

**COLLECTIVE ACTION ALLEGATIONS**

~~48.~~92.  ~~Plaintiff brings~~Plaintiffs bring this action ~~individually and as class representative~~ individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and ~~whom~~who were ~~either 1)~~ not compensated at ~~their promised hourly rate~~the minimum wage for all hours worked ~~and~~or 2) not compensated at one and one half times their ~~promised work~~regular rates for all hours worked in excess of forty (40) hours per week or 3) worked in tipped positions and had their tips retained (the "Collective Action Members").

**CLASS ACTION ALLEGATIONS**

~~49.~~93.  ~~Plaintiff brings his~~Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by

~~TTroy~~  ~~ASb~~

Amended Complaint                                                                                   18 of 33

Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

50.94.  All said persons, including ~~Plaintiff~~Plaintiffs, are referred to herein as the "Class."

51.95.  The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

### *Numerosity*

52.96.  The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

### *Commonality*

53.97.  There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

     a.    Whether Defendant employed ~~Plaintiff~~Plaintiffs and the Class within the meaning of the New York law;

     b.    Whether ~~Plaintiff~~Plaintiffs and Class members are promised and not paid at their promised ~~hourly wage~~wages;

     c.    Whether ~~Plaintiff~~Plaintiffs and Class members are not paid at least the hourly minimum wage for each hour worked

**Formatted:** Tab stops: Not at  3" +  6"

d.      Whether ~~Plaintiff~~Plaintiffs and Class members are entitled to and paid overtime at one and one-half times their ~~promised hourly wage~~regular rates under the New York Labor Law;

e.      Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiff and the ~~Rule 23~~ Class spread-of-hours pay as required by the NYLL;

~~f.      Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;~~

~~g.~~f.      Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff and the Rule 23 Class's start of employment and/or timely thereafter;

~~h.~~g.      Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiff and the Rule 23 class on each payday; and

~~i.~~h.      At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

***Typicality***.

~~54.~~98.   ~~Plaintiff's~~Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

***Adequacy***.

~~TTroy~~ ————————————— ~~ASb~~

Amended Complaint

55.99.  Plaintiff isPlaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

### *Superiority*

56.100.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

**Formatted:** Tab stops: Not at  3" +  6"

~~57.~~101.    Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [~~Violations~~Violation of the Fair Labor Standards Act—Failure to Pay ~~Unpaid Wages~~Minimum Wage
### Brought on behalf of ~~the Plaintiff~~Plaintiffs and the ~~FLSA~~ Collective]

~~58.~~102.    ~~Plaintiff~~Plaintiffs re-~~alleges~~allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

~~59.~~103.    At all relevant times, Defendants had a policy and practice of refusing to pay ~~Plaintiff~~Plaintiffs in full, and the similarly situated collective action members, for some or all of the hours they worked.

~~60.~~104.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

~~61.~~105.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate ~~Plaintiff~~Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
**[Violation of the New York Labor Law—Failure to Pay ~~Unpaid Wages~~Minimum Wage Brought on behalf of ~~Plaintiff~~Plaintiffs and ~~Rule 23~~the Class]**

~~62.~~106.        ~~Plaintiff~~Plaintiffs re-~~alleges~~allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

~~63.~~107.        At all relevant times, ~~Plaintiff is~~Plaintiffs are employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

~~64.~~108.        At all relevant times, Defendants had a policy and practice of refusing to pay ~~Plaintiff~~Plaintiffs, and the collective action members, in full for some or all of the hours they worked.

~~65.~~109.        Defendants knowingly and willfully violated ~~Plaintiff's~~Plaintiffs' and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

~~66.~~110.        An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
**[Violation**
**[Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of ~~the Plaintiff~~Plaintiffs and the ~~FLSA~~ Collective]**

~~67.~~111.        ~~Plaintiff~~Plaintiffs re-~~alleges~~allege and ~~incorporates~~incorporate by reference all preceding paragraphs as though fully set forth herein.

~~68.~~112.        The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives

~~TTroy~~                                                    ~~ASb~~
Amended Complaint

compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

69.113.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

70.114.    Defendants' failure to pay Plaintiff Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

71.115.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

72.116.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

73.117.    Defendants willfully failed to notify Plaintiff Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives' labor.

74.118.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially

Formatted: Tab stops: Not at  3" + 6"

injure Plaintiff and Collective Action members.

## COUNT IV.
### [Violation of the New York Labor Law—Failure to Pay Overtime
### Brought on behalf of ~~Plaintiff~~Plaintiffs and ~~Rule 23~~the Class]

~~75.~~119.        ~~Plaintiff~~Plaintiffs re-~~alleges~~allege and ~~incorporates~~incorporate by reference all preceding paragraphs as though fully set forth herein.

~~76.~~120.        An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

~~77.~~121.        At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff at one and one-half times the hourly rate the Plaintiff and the class are entitled to.

~~78.~~122.        ~~Defendant'~~Defendants' failure to pay ~~Plaintiff his~~Plaintiffs their overtime pay violated the NYLL.

~~79.~~        Defendants' failure to pay ~~Plaintiff was not in good faith.~~

~~1.~~
~~[Violation of New York Labor Law—Spread of Time Pay~~
~~Brought on behalf of Plaintiff and Rule 23 Class]~~

~~80.        Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.~~

~~81.~~1.        ~~The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, et seq., and §§ 650, et seq., and New York State Department of Labor regulations § 146-1.6.~~

~~82.~~123.        ~~Defendants' failure to pay Plaintiff spread-of-hours pay~~Plaintiffs was not in good faith.

~~TTroy~~                                        ~~ASb~~
Amended Complaint                                    25 of 33

## COUNT V.
### [Violation of 29 U.S.C. §203(m) and (t)—Illegal Retention of Tips
### Brought on behalf of Plaintiffs and the Collective]

~~83.~~124.        Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

~~84.~~125.        A tip is the sole property of the tipped employee regardless of whether the employer takes a tip credit.

~~85.~~126.        The FLSA prohibits any arrangement between the employer and tipped employee whereby any part of the tip received becomes the property of the employer.

~~86.~~127.        Retaining the entirety all the tips customers paid to HungryPanda deliveryman unjustly enrich the Owner/ Operator Defendants or using portion of the tips to pay non-tipped employees is prohibited under the FLSA.

~~87.~~128.        Employers are prohibited from unjustly enriching themselves by charging their employees a gratuities service fee charge which exceed the costs of converting credit card gratuities into cash.

## COUNT VI.
### [Illegal Tip Retention, NYLL §146-2.18 and NYLL §146-2.20
### Brought on behalf of Plaintiffs and the Class]

~~88.~~129.        Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

~~89.~~130.        Section 196-d of the New York State Labor Law prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge purported to be a gratuity.

~~90.~~131.        A charge purported to be a gratuity, including charges advertised to be "delivery fee" to customers, must be distributed in full as gratuities to the service employees or food service workers who provided the service.

91.132.     §146-2.18 provides that there shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for "service" or "food service," is a charge purported to be a gratuity.

**COUNT VII.**
**[Violation of the New York Labor Law—Failure to ~~Provide Meal Periods~~Pay Spread of Time**
**Brought on behalf of ~~Plaintiff~~Plaintiffs and the ~~Rule 23~~ Class]**

92.133.     ~~Plaintiff~~Plaintiffs re-~~alleges~~allege and ~~incorporates~~incorporate by reference all preceding paragraphs as though fully set forth herein.

134.     The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

93.     ~~The NYLL requires that employees provide a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p.m. and 6 a.m. NYLL § 162.~~

94.     ~~Defendants failed to provide meal periods required by NYLL § 162 for every day that Plaintiff worked.~~

95.     ~~Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be~~

Formatted: Heading 2, Left, None, Right: 0", Automatically adjust right indent when grid is defined, Space After: 0 pt, No bullets or numbering, Widow/Orphan control, Don't keep with next, Don't keep lines together, Adjust space between Latin and Asian text, Adjust space between Asian text and numbers

Formatted: Font: Not Bold

Formatted: Indent: Left: 0", Right: 0"

Formatted: Tab stops: Not at 3" + 6"

~~kept conspicuously posted in the main entrance of the establishment. No such permit is~~

~~posted.~~

~~96.~~135.     Defendants' failure to ~~provide the meal periods required by NYLL § 162~~pay Plaintiffs spread-of-hours pay was not in good faith.

~~2.~~
[Violation of ~~New York Labor Law – Failure to Keep Records~~
~~Brought on behalf of Plaintiff and Rule 23 Class]~~

~~97.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as~~

~~though fully set forth herein.~~

~~98.     Defendants did not maintain, establish and preserve Plaintiff's weekly payroll~~

~~records for a period of not less than six years, as required by NYCRR § 146-2.1.~~

~~99.     As a result of Defendants' unlawful conduct, Plaintiff has sustained damages~~

~~including loss of earning, in an amount to be established at trial, liquidated damages,~~

~~prejudgment interest, costs and attorneys' fee, pursuant to the state law.~~

~~100.    Upon information and belief, Defendants failed to maintain adequate and~~

~~accurate written records of actual hours worked and true wages earned by Plaintiff in order to~~

~~facilitate their exploitation of Plaintiff's labor.~~

~~101.    Defendants' failure to maintain adequate and accurate written records of actual hours~~

~~worked and true wages earned by Plaintiff were not in good faith.~~the

**COUNT VIII.**
~~[Violation of~~ **New York Labor Law—Failure to Provide Time of Hire Wage Notice**
**Brought on behalf of ~~Plaintiff~~Plaintiffs and ~~Rule 23~~the Class]**

~~102.~~136.     ~~Plaintiff~~Plaintiffs re-~~alleges~~allege and ~~incorporates~~incorporate by reference

all preceding paragraphs as though fully set forth herein.

~~103.~~137.     The NYLL and supporting regulations require employers to provide written

notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week,

salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

~~104.~~138.	Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

~~105.~~139.	Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiff even after the fact.

~~106.~~140.	Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

**COUNT IX.**
**[Violation of New York Labor Law—Failure to Provide Wage Statements**
**Brought on behalf of Plaintiff and ~~Rule 23~~the Class]**

Formatted: Indent: First line:  0", Right:  0"

~~107.~~141.	~~Plaintiff~~Plaintiffs re-~~alleges~~allege and ~~incorporates~~incorporate by reference all preceding paragraphs as though fully set forth herein.

Formatted: Indent: Left:  0", Right:  0"

~~108.~~142.	The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

~~109.~~143.	Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

Formatted: Tab stops: Not at  3" +  6"

110.144.      Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

**COUNT X.**
**[[Defendants' Failure ~~To~~to Pay ~~To~~to Delivery Experts Working "On ~~The~~the Road" Brought on Behalf of Plaintiff ~~and the Class~~Weng]**

111.145.      Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

112.146.      Throughout the relevant period, Defendants required their delivery experts to maintain and provide a safe, functioning, insured and legally-operable automobile to make deliveries.

113.147.      Throughout the relevant period, Defendants required their delivery experts to bear all of the "out-of-pocket" costs associated with their vehicles, including costs for gasoline, vehicle depreciation, insurance, maintenance and repairs. For decades, the Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate for businesses and employees to use in computing the *minimum* deductible costs of operating an automobile for business purposes.

114.148.      For 2019, the IRS Standard Mileage Rate is $0.580 per mile.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, on behalf of himself, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)      Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of out-of-pocket breach-of-contract delivery costs for motorcycle expenses incurred and expended by Plaintiff on Defendants' bequest and behalf;

**Formatted:** Tab stops: Not at  3" +  6"

h)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

i)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

j)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

k)      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

l)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)     The cost and disbursements of this action;

n)      An award of prejudgment and post-judgment fees;

o)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

p)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

**Formatted:** Tab stops: Not at  3" + 6"

Dated: Flushing, New York
NY
       January 25, 2021

           /s/ John Troy
           John Troy (JT0481)